**BARSHAY SANDERS, PLLC**
100 Garden City Plaza, Suite 500
Garden City, New York 11530
Tel: (516) 203-7600
Fax: (516) 282-7878
Email: *csanders@BarshaySanders.com*
*Attorneys for Plaintiff*
Our File No.: 120053

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHAIM OVITSH, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>vs.<br><br>MIDLAND CREDIT MANAGEMENT, INC.,<br><br>                    Defendant. | Case No:<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Chaim Ovitsh, individually and on behalf of all others similarly situated (hereinafter referred to as "*Plaintiff*"), by and through the undersigned counsel, complains, states and alleges against Midland Credit Management, Inc. (hereinafter referred to as "*Defendant*"), as follows:

**INTRODUCTION**

1. This action seeks to recover for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* (the "FDCPA").

**JURISDICTION AND VENUE**

2. This Court has federal subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d).

3. Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this Judicial District.

4. At all relevant times, Defendant conducted business within the State of New York.

1

## PARTIES

5. Plaintiff Chaim Ovitsh is an individual who is a citizen of the State of New York residing in Kings County, New York.

6. Plaintiff is a natural person allegedly obligated to pay a debt.

7. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3).

8. On information and belief, Defendant Midland Credit Management, Inc. is a California Corporation with a principal place of business in San Diego County, California.

## THE FDCPA AS IT RELATES TO THE CLAIMS HEREIN

9. Congress enacted the FDCPA upon finding that debt collection abuse by third party debt collectors was a widespread and serious national problem. *See* S. Rep. No. 95-382, at 2 (1977) *reprinted in* U.S.C.C.A.N. 1695, 1696; 15 U.S.C § 1692(a).

10. The purpose of the FDCPA is to protect consumers from deceptive or harassing actions taken by debt collectors, with the aim of limiting the suffering and anguish often inflicted by independent debt collectors. *Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2002); *Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2d Cir. 1996).

11. To further these ends, "the FDCPA enlists the efforts of sophisticated consumers ... as 'private attorneys general' to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others." *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 91 (2d Cir. 2008).

12. As such, the circumstances of the particular debtor in question have no bearing as to the question of whether there has been a violation of the FDCPA. *See Easterling v. Collecto, Inc.*, 692 F.3d 229, 234 (2d Cir. 2012). Indeed, it is not necessary for a plaintiff to show that he or she was confused by the communication received. *Jacobson,* 516 F.3d at 91. Likewise, the plaintiff consumer's actions or inaction in response to a communication from a debt collector are irrelevant. *Thomas v. Am. Serv. Fin. Corp.*, 966 F. Supp. 2d 82, 90 (E.D.N.Y. 2013).

13. Instead, "the test is how the least sophisticated consumer—one not having the astuteness of a 'Philadelphia lawyer' or even the sophistication of the average, everyday, common consumer—understands the notice he or she receives." *Russell,* 74 F.3d at 34.

14. If a debt collector's communication is "reasonably susceptible to an inaccurate

reading" by the least sophisticated consumer, it violates the FDCPA. *DeSantis v. Computer Credit, Inc.*, 269 F.3d 159, 161 (2d Cir. 2001). Similarly, a communication violates the FDCPA if it is "open to more than one reasonable interpretation, at least one of which is inaccurate," or if the communication "would make the least sophisticated consumer uncertain as to her rights." *Clomon v. Jackson*, 988 F.2d 1314, 1319 (2d Cir. 1993); *Jacobson,* 516 F.3d at 90.

15. The FDCPA is a strict liability statute, and a debt collector's intent may only be considered as an affirmative defense. 15 U.S.C. § 1692k(c); *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010). Likewise, "the degree of a defendant's culpability may only be considered in computing damages." *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 63 (2d Cir. 1993). A single violation of the FDCPA to establish civil liability against the debt collector. *Id.*

## FACTUAL ALLEGATIONS

16. Defendant regularly engages in the purchase of defaulted accounts asserted to be owed to others.

17. Defendant is regularly engaged, for profit, in the collection of debts allegedly owed by consumers.

18. The principal purpose of Defendant's business is the acquisition and collection of such debts.

19. Defendant uses the mails in its debt collection business.

20. Defendant is a "debt collector" as defined by 15 U.S.C. § 1692a(6) (*Hamlett v. Santander Consumer USA Inc.*, 931 F.Supp.2d 451, 455 (E.D.N.Y.2013 ) (it is well established that "an assignee of a debt that is in default at the time the debt was obtained is considered a debt collector for purposes of the FDCPA").

21. Defendant alleges Plaintiff owes a debt (the "alleged Debt").

22. The alleged Debt is an alleged obligation of Plaintiff to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes.

23. The alleged Debt does not arise from any business enterprise of Plaintiff.

24. The alleged Debt is a "debt" as defined by 15 U.S.C. § 1692a(5).

25. At an exact time known only to Defendant, the alleged Debt was assigned or otherwise transferred to Defendant for collection.

3

26.     At the time the alleged Debt was assigned or otherwise transferred to Defendant for collection, the alleged Debt was in default.

27.     In its efforts to collect the alleged Debt, Defendant contacted Plaintiff by calls to Plaintiff's telephone.

28.     Plaintiff felt harassed due to the number of phone calls Defendant made to Plaintiff's telephone.

29.     Plaintiff felt pressured due to the number of phone calls Defendant made to Plaintiff's telephone.

30.     In furtherance of its efforts to collect the alleged Debt, Defendant contacted Plaintiff by letters including the letter dated December 23, 2019 (the "Letter"). (A true and accurate copy of the Letter is annexed hereto as **"Exhibit 1"**).

31.     The Letter conveyed information regarding the alleged Debt.

32.     The Letter is a "communication" as defined by 15 U.S.C. § 1692a(2).

33.     The Letter was received and read by Plaintiff.

34.     The Letter contains a settlement offer stating: "This month we are going to save you money- 10% to be exact. This slashes your current debt of $15,810.98 to $14,229.88!".

35.     Moreover, below the settlement offer, the Letter states in boldface type: "**Hurry! This offer expires 1/22/2020**"

**NO Interest!**
Your balance won't increase because MCM doesn't charge interest.

**NO More Calls!**
Once resolved, we will STOP calling you on this account.

**NO More Letters!**
Once paid off, the letters will STOP.

**Hurry! This offer expires 1/22/2020.**
Visit **MidlandCredit.com** or call 877-653-5260 to put your current debt of $15,810.98 behind you.

**FIRST COUNT**
**Violation of 15 U.S.C. §§ 1692e and 1692e(10)**

36.     Plaintiff repeats and realleges the foregoing paragraphs as if fully restated herein.

37.     While a settlement offer in and of itself is not improper, such offer runs afoul of the FDCPA if it impresses upon the least sophisticated consumer that if he or she does not accept the settlement offer by the stated deadline, he or she will have no further opportunity to settle the alleged Debt for less than the full amount.

4

38. These concerns can be adequately addressed by the debt collector including with the offer the following language: "We are not obligated to renew this offer." *Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 776 (7th Cir. 2007).

39. The impetus behind the holding in *Evory* was the observation that debt collectors will often use language such as "TIME'S A WASTIN!" or "payment must be received by" a date certain to take advantage of the settlement offer.

40. The Court found this to be a false and/or deceptive practice, insofar as it was solely a mechanism designed to create a false sense of urgency for a consumer to make a payment when, in reality, debt collectors will often renew (or make better) settlement offers thereafter.

41. To strike a balance between discouraging debt collectors from making settlement offers in collection letters, while still protecting consumers from having debt collectors using such offers to create a false sense of urgency, the Court adopted the "safe harbor" language quoted above.

42. By requiring the inclusion of language indicating that the debt collector is "not obligated to renew" an offer, the consumer will be empowered with the knowledge that an offer may be renewed, but it is not guaranteed.

43. The point is illustrated here. Prior to sending the December Letter, Defendant contacted Plaintiff by letter dated August 22, 2019.[1] The August 22, 2019 letter extended a similar offer of settlement, but properly included the *Evory* "safe harbor" language indicating that Defendant was not obligated to renew the offer.[2]

44. The December 23, 2019 Letter was the next communication received by Plaintiff from Defendant, which Letter did not include the safe harbor language. *See Exhibit 1*.

45. Thereafter, Defendant sent Plaintiff at least three (3) more letters seeking to collect the alleged Debt.[3] Each of these letters included the *Evory* "safe harbor" language.

46. The December 23, 2019 Letter was the only letter in the series of communications from Defendant to Plaintiff which did not include the *Evory* "safe harbor" language.

47. Upon information and belief, Defendant intentionally omitted the *Evory* "safe harbor" language for the purpose of creating a false sense of urgency in the Letter.

---

[1] A copy of the August 22, 2019 letter is annexed hereto as Exhibit 2.
[2] See *id.*
[3] Copies of the letters dated April 3, 2020, May 15, 2020, and June 26, 2020 are annexed hereto collectively as Exhibit 3.

5

48. Defendant thereafter extended three similar offers to Plaintiff.

49. 15 U.S.C. § 1692e protects Plaintiff's concrete interests. Plaintiff has the interest and right to be free from deceptive and/or misleading communications from Defendant. As set forth herein, Defendant deprived Plaintiff of this right.

50. 15 U.S.C. § 1692e prohibits a debt collector from using any false, deceptive, or misleading representation or means in connection with the collection of any debt.

51. 15 U.S.C. § 1692e(10) prohibits the use of any false representation or deceptive means to collect or attempt to collect any debt.

52. A debt collection practice can be a "false, deceptive, or misleading" practice in violation of 15 U.S.C. § 1692e even if it does not fall within any of the subsections of 15 U.S.C. § 1692e.

53. A collection letter violates 15 U.S.C. § 1692e if, in the eyes of the least sophisticated consumer, it is open to more than one reasonable interpretation, at least one of which is inaccurate.

54. A collection letter also violates 15 U.S.C. § 1692e if, it is reasonably susceptible to an inaccurate reading by the least sophisticated consumer.

55. The phrase "we are not obligated to renew this offer" adequately conveys to the least sophisticated consumer that there is a renewal possibility, but also that it is not assured.

56. The Letter does not state "we are not obligated to renew this offer," nor does it include any kind of substantially similar language, despite the fact that Defendant thereafter extended three similar offers to Plaintiff

57. The least sophisticated consumer would likely be misled by the settlement offer, by reasonably believing it was his last opportunity to settle the alleged Debt for less than the amount owed, insofar as the August letter preceding it included the *Evory* safe harbor language.

58. The least sophisticated consumer would likely be misled in a material way by the settlement offer, by reasonably believing it was his last opportunity to settle the alleged Debt for less than the amount owed.

59. Plaintiff was confused by the settlement offer.

60. For the foregoing reasons, Defendants violated 15 U.S.C. §§ 1692e and 1692e(10) and are liable to Plaintiff therefor.

**CLASS ALLEGATIONS**

61. Plaintiff brings this action individually and as a class action on behalf of all persons similarly situated in the State of New York.

62. Plaintiff seeks to certify a class of:

> All consumers to whom Defendant sent a collection letter which failed to advise the consumer that Defendant was not obligated to renew its settlement offer which letter was sent on or after a date one year prior to the filing of this action to the present.

63. This action seeks a finding that Defendant's conduct violates the FDCPA, and asks that the Court award damages as authorized by 15 U.S.C. § 1692k.

64. The Class consists of more than thirty-five persons.

65. Plaintiff's claims are typical of the claims of the Class. Common questions of law or fact raised by this action affect all members of the Class and predominate over any individual issues. Common relief is therefore sought on behalf of all members of the Class. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

66. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to the individual members of the Class, and a risk that any adjudications with respect to individual members of the Class would, as a practical matter, either be dispositive of the interests of other members of the Class not party to the adjudication, or substantially impair or impede their ability to protect their interests. Defendant has acted in a manner applicable to the Class as a whole such that declaratory relief is warranted.

67. Plaintiff will fairly and adequately protect and represent the interests of the Class. The management of the class is not extraordinarily difficult, and the factual and legal issues raised by this action will not require extended contact with the members of the Class, because Defendant's conduct was perpetrated on all members of the Class and will be established by common proof. Moreover, Plaintiff has retained counsel experienced in actions brought under consumer protection laws.

## JURY DEMAND

68. Plaintiff hereby demands a trial of this action by jury.

## PRAYER FOR RELIEF

**WHEREFORE** Plaintiff respectfully requests judgment be entered:

    a. Certifying this action as a class action; and

    b. Appointing Plaintiff as Class Representative and Plaintiff's attorneys as Class Counsel;

    c. Finding Defendant's actions violate the FDCPA; and

    d. Granting damages against Defendant pursuant to 15 U.S.C. § 1692k; and

    e. Granting Plaintiff's attorneys' fees pursuant to 15 U.S.C. § 1692k; and

    f. Granting Plaintiff's costs; all together with

    g. Such other relief that the Court determines is just and proper.

DATED: December 23, 2020

**BARSHAY SANDERS, PLLC**

By: /s/ *Craig B. Sanders*
Craig B. Sanders, Esquire
100 Garden City Plaza, Suite 500
Garden City, New York 11530
Tel: (516) 203-7600
Fax: (516) 706-5055
*csanders@barshaysanders.com*
*Attorneys for Plaintiff*
Our File No.: 120053